Curia, per O’Neall, J.
The first ground of appeal presents a naked question of fact which was properly submitted to the jury; their decision thereupon is fully sustained by the evidence, and cannot be disturbed.
The second ground was not seriously urged below, or here. The valuation of the vessel set down in the policy, was three thousand five hundred dollars, and her true value,, in eluding the sea stores, wages of seamen, and insurance, amounted to three thousand four hundred and twelve dollars and fifty-two cents. The policy in this instance was an open and not a valued one. The value set down in the contract had no effect upon the rights or interests of the defendants, and hence does not affect its validity. The plaintiffs, to recover, were bound to show the true value of the vessel, which they proved to be three thousand dollars.
The third ground presents a question of no difficulty. Notice of the state of the vessel on reaching her port of destination, was not necessary to be given before the assured could abandon, and treat her as a total loss. If the vessel had been in the port where she was insured, then, indeed, *150 there would have been some reason in saying that the underwriters ought to have had notice before a sale of the vessel could be made. But in a foreign port, which Mobile must be considered to be, it could not be expected that any such notice should be given; if the state of the vessel was such as to constitute a total loss, then the subsequent disposition of the vessel by sale could not effect the right of the assured to claim accordingly. All that could be required, would be that the assured or the master of the vessel, should under such circumstances, do that which a prudent, man, uninsured would do. The testimony very clearly shows that the vessel was unworthy of repair. The sale was, therefore, the very act which, any man would have wished and directed. But a conclusive answer to this objection is found in the fact, that the very intelligent officer at the head of the insurance company, (Mr. Haslett,) by the authority of the board of directors, placed their refusal to pay the claim of the plain tiffs on the ground, that the injury done to the vessel did not justify an abandonment for a total loss.
In connection with this ground the defendant’s counsel argued that the company ought to have had notice of the abandonment, or rather that the plaintiff has abandoned as for a total loss, within a reasonable time. There is no doubt about the rule, and if there had been any foundation in fact for the argument', the objection would have been raised in Mr. Haslett’s letter to the plaintiff’s attorney, declining to pay the loss on a different ground. Indeed, no such ground was pressed below. The fact of abandonment within proper time was considered as either not disputed, or as plainly to be inferred from Mr. Haslett’s letter. After the jury, having all the circumstances of the case before them, have found for the plaintiffs, it is not to be slightly inferred that there was no evidence of an abandonment; from slight evidence we should be disposed to say that they had deduced a proper conclusion.
The sixth ground may be disposed of at once by saying that the insurers made no offer to repair, and hence they can claim no benefit from a right, (if any such exists,) which they did not exercise.
The whole merits of the case rested on the fourth and fifth grounds; these at the Court below, were very properly de-bateable matters, but the defendants had the advantage of the *151 rule contended for by them, laid down as broadly as they could debire, and a verdict founded upon tbe facts under the law ruled as they contended it should be, cannot be disturbed. I have no doubt that in the case of a claim for a total loss, if the repairs at the port where they are to be made, will exceed one half of the actual value of the vessel at that place after she is repaired,' that the assured may abandon and claim for a total loss. Patapasco Insurance Company vs. Southgate et al. 5 Pel. 619. This may be illustrated in this case in this way. The cost of repairs according to the ship carpenter’s testimony may be set down at two thousand four hundred dollars. The vessel sold for eight hundred and ten dollars, mating her aggregate value when repaired three thousand two hundred and ten dollars; taking this as the true value at Mobile, the repairs would greatly exceed one-half of the value. The company would not, however, be bound by t^j^yds^ss^e estimating the value of the ship ; they mighjjKQtów l!|pit she Nffas sold for too small a sum. This is, how^jji^, n^ prfenqed on the present occasion. J j*j ^
But I did not confine the juryfto this .viejyi; I $©ld them that in a claim for a total losf? was ^guesttiongd by able jurists, whether in ascertaining Jfchfé\am^nt 'of repairs, one-third new for old ought to be de&u’ótéd Pliill^qm Ins. 403; and that they might in this case mtñ^mS-afBtóhative of the question as granted, and deduct one-third, new for old, and assume the value of the vessel to be as it was when she sailed, three thousand dollars — in this point of view, the cost of repairs exceeded one-half, for the total cost was estimated at two thousand four hundred dollars — deduct one-third, new for old, eight hundred dollars, would leave the cost of repairs one thousand six hundred dollars, exceeding by one hundred dollars, the half of the value of the vessel.
The motion for a new trial is dismissed.
Gantt, J., dissented.